IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| MARY L. BANKS, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| V. | § | CIVIL ACTION NO. H-07-2226 |
| | § | |
| MICHAEL J. ASTRUE, | § | |
| COMMISSIONER OF THE SOCIAL | § | |
| SECURITY ADMINISTRATION, | § | |
| | § | |
| Defendant. | § | |

**MEMORANDUM AND ORDER GRANTING
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND
DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

Before the Court [1] in this social security appeal are Plaintiff's Motion for Summary Judgment (Document No. 20), Defendant's Response to Plaintiff's Motion for Summary Judgment (Document No. 21), Defendant's Cross Motion for Summary Judgment (Document No. 16), and Defendant's Memorandum in Support of Cross Motion for Summary Judgment (Document No. 17). Having considered the motions, the administrative record, and the applicable law, the Court ORDERS, for the reasons set forth below, that Defendant's Motion for Summary Judgment is GRANTED, Plaintiff's Motion for Summary Judgment is DENIED, and the decision of the Commissioner of the Social Security Administration is AFFIRMED.

**I.   Introduction**

Plaintiff Mary Banks ("Banks") brings this action pursuant to Section 205(g) of the Social

---

[1] On March 20, 2008, pursuant to the parties' consent, this case was transferred from the District Judge to the undersigned Magistrate Judge for all further proceedings. See Document No. 15.

Security Act ("Act"), 42 U.S.C. § 405(g), seeking judicial review of an adverse final decision of the Commissioner of the Social Security Administration ("Commissioner") denying her application for disability insurance benefits. Banks argues the Administrative Law Judge's ("ALJ") decision is flawed because: (1) it is not supported by substantial evidence; and (2) it contains errors of law. In contrast, the Commissioner contends there is substantial evidence in the record to support the ALJ's decision and the decision comports with applicable law, and should thus be affirmed. Namely, the Commissioner asserts the ALJ properly determined Banks retained the ability to perform her past relevant work as a short order cook and was therefore not disabled within the meaning of the Act.

**II.    Administrative Proceedings**

On March 3, 2004, Banks filed an application for Disability Insurance Benefits, alleging an amended disability onset date of March 31, 2004, due to hypertension, diabetes, glaucoma, and a heart condition. (Tr. 32, 65-67, 73, 477). The claim was denied initially and on reconsideration, and a request for hearing was timely filed. (Tr. 32). On November 28, 2005 a hearing was held in Victoria, Texas, at which both Banks and the vocational expert Don Marth, Ph.D. testified before an ALJ. (Tr. 32, 455). The ALJ issued a decision on February 21, 2006, denying Banks' claim for benefits. (Tr. 32-37). While the ALJ found Banks had "severe" impairments, he determined her impairments were not "severe" enough to meet or medically equal, either singly or in combination, one of the impairments listed in Appendix 1 Subpart P, in Regulations No. 4. (Tr. 32-37). The ALJ then evaluated whether Banks was capable of performing her past relevant work as a short order cook and found that she was. (Tr. 32-37). Because of this, he found Banks was not under a "disability" as defined in the Act. (Tr. 32-37).

Banks then requested a review of the decision with the Appeals Council. (Tr. 27-28). The Appeals Council will grant a request to review an ALJ's decision if any of the following circumstances are present: (1) it appears that the ALJ abused his discretion; (2) the ALJ made an error of law in reaching his conclusion; (3) substantial evidence does not support the ALJ's actions, findings, or conclusions, or (4) a broad policy issue may affect the public interest. 20 C.F.R. § 404.970; 20 C.F.R. § 416. 1470. After considering Banks' contentions in light of the applicable regulations and evidence, on February 1, 2007, the Appeals Council concluded there was no basis under the regulations for granting the request for review. (Tr. 2-4).

Banks timely filed an appeal of the ALJ's decision. 42 U.S.C. § 405(g). Plaintiff has filed a Motion for Summary Judgment. The Commissioner has filed a response to Plaintiff's Motion for Summary Judgment, a Cross Motion for Summary Judgment, and a Memorandum in Support of Cross Motion for Summary Judgment. This appeal is now ripe for ruling.

**III. Standard for Review of Agency Decision**

The court's review of a denial of disability benefits is limited "to determining (1) whether substantial evidence supports the Commissioner's decision, and (2) whether the Commissioner's decision comports with relevant legal standards." *Jones v. Apfel*, 174 F.3d 692, 693 (5th Cir. 1999). Indeed, Title 42, Section 405(g) limits judicial review of the Commissioner's decision: "The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." The Act specifically grants the district court the power to enter judgment, upon the pleadings and transcript, "affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing" when not supported by substantial evidence. 42 U.S.C. § 405(g). While it is incumbent upon the court to examine the record

3

in its entirety to decide whether the decision is supportable, *Simmons v. Harris*, 602 F.2d 1233, 1236 (5th Cir. 1979), the court may not "reweigh the evidence in the record, nor try the issues de novo, nor substitute [its] judgment for that of the [Commissioner] even if the evidence preponderates against the [Commissioner's] decision." *Johnson v. Bowen*, 864 F.2d 340, 343 (5th Cir. 1988); *see also Jones*, 174 F.3d at 693; *Cook v. Heckler*, 750 F.2d 391, 392-93 (5th Cir. 1985). Conflicts in the evidence are for the Commissioner to resolve. *Anthony v. Sullivan*, 954 F.2d 289, 295 (5th Cir. 1992).

The United States Supreme Court has defined "substantial evidence," as used in the Act, to be "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison Co., v. N.L.R.B.,* 305 U.S. 197, 229 (1938)). Substantial evidence is "more than a scintilla and less than a preponderance." *Spellman v. Shalala,* 1 F.3d 357, 360 (5th Cir. 1993). The evidence must create more than "a suspicion of the existence of the fact to be established, but 'no substantial evidence' will be found only where there is a 'conspicuous absence of credible choices' or 'no contrary medical evidence.'" *Hames v. Heckler*, 707 F.2d 162, 164 (5th Cir. 1983).

**IV. Burden of Proof**

An individual claiming entitlement to disability insurance benefits under the Act has the burden of proving his disability. *Johnson,* 864 F.2d at 344. The Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The impairment must be proven through medically accepted clinical and laboratory diagnostic techniques. 42 U.S.C. §

423(d)(3).  The impairment must be so severe as to limit the claimant in the following manner:

> he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied to work.

42 U.S.C. § 423(d)(2)(A).  The mere presence of an impairment is not enough to establish that one is suffering from a disability.  Rather, a claimant is disabled only if he is "incapable of engaging in any substantial gainful activity." *Anthony*, 954 F.2d at 293 (quoting *Milam v. Bowen,* 782 F.2d 1284, 1286 (5th Cir. 1986)).

> The Commissioner applies a five-step sequential process to decide disability status:
>
> 1. If the claimant is presently working, a finding of "not disabled" must be made;
>
> 2. If the claimant does not have a "severe impairment" or combination of impairments, [he] will not be found disabled;
>
> 3. If the claimant has an impairment that meets or equals an impairment listed in Appendix 1 of the Regulations, disability is presumed and benefits are awarded;
>
> 4. If the claimant is capable of performing past relevant work, a finding of "not disabled" must be made; and
>
> 5. If the claimant's impairment prevents [him] from doing any other substantial gainful activity, taking into consideration [his] age, education, past work experience and residual functional capacity, [he] will be found disabled.

*Anthony,* 954 F.2d at 293; *see also Leggett v. Chater,* 67 F.3d 558, 563 n.2 (5th Cir. 1995); *Wren v. Sullivan,* 925 F.2d 123, 125 (5th Cir. 1991).  Under this formula, the claimant bears the burden of proof on the first four steps of the analysis to establish that a disability exists. *McQueen v. Apfel,* 168 F.3d 152, 154 (5th Cir. 1999).  If successful, the burden shifts to the Commissioner, at step five, to show that the claimant can perform other work. *Id.*  Once the Commissioner shows that other jobs

are available, the burden shifts, again, to the claimant to rebut this finding. *Selders v. Sullivan*, 914 F.2d 614, 618 (5th Cir. 1990). If, at any step in the process, the Commissioner determines that the claimant is or is not disabled, the evaluation ends. *Leggett,* 67 F.3d at 564.

Here, the ALJ found at step four that Banks, despite her impairments and limitations, could perform her past relevant work as a short order cook, and because of this was not considered disabled as defined in the Social Security Act. In this appeal, the Court must determine whether substantial evidence supports this finding, and whether the ALJ used the correct legal standards in arriving at that conclusion. More particularly, the Court must consider the following issues: (1) whether the ALJ erred in finding that Banks "Returned to Work" on March 31, 2004; (2) whether the ALJ failed to properly consider the opinion of treating physician, Dr. C. Zorilla; (3) whether the ALJ erred in failing to properly accommodate Banks' medication side effects and all limitations supported by the record in his RFC finding; and (4) whether the ALJ erred in finding that Banks can perform her past relevant work.

In determining whether substantial evidence supports the ALJ's decision, the court weighs four factors: (1) the objective medical facts; (2) the diagnosis and expert opinions of treating physicians on subsidiary questions of fact; (3) subjective evidence of pain as testified to by the plaintiff and corroborated by family and neighbors; and (4) the plaintiff's educational background, work history and present age. *Wren,* 925 F.2d at 126.

V.     Discussion

    A.     **Objective Medical Evidence**

The objective medical evidence in the record documents that Banks suffers from hypertension, diabetes, glaucoma, and a heart condition. With respect to her heart condition, on June 21, 2003, Banks went to the hospital complaining of recurrent chest pains. (Tr. 437-38). The attending physician diagnosed her with acute non-ST segment elevation myocardial infarction, left bundle branch block, chest wall tenderness, type 2 diabetes mellitus, hypertension, atherosclerotic peripheral vascular disease, unstable angina pectoris, and morbid obesity. (Tr. 435-36). On June 23, 2003, she had an aorta coronary bypass grafting times two. (Tr. 428). The surgery went well, and on her follow-up visits on July 7, July 11, and October 21, 2003, her doctors reported she was doing well and had no complaints. (Tr. 131, 136). This changed however, on November 18, 2003, when she began complaining of chest wall tenderness around the area of her incision. (Tr. 131). Dr. Zorrilla recorded she had hyperesthesia and in her assessment recorded she suffers from chronic chest wall pain, essential hypertension, diabetes mellitus, and hypercholesterolemia. (Tr. 131).

In January 2004, Banks went to several follow-up examinations with minor complaints. (Tr. 122, 123, 128, 129). On January 12, 2003 Banks had an echocardiogram, revealing she had normal chamber dimensions, normal LV systolic function, and mild mitral and tricuspid insufficiency. (Tr. 128). On January 23, 2004, Banks complained of a little more urination at night, and Dr. Wissinger recorded his concern she might have mild anemia. (Tr. 123). However, he also wrote her cholesterol was excellent at 151 with an HDL of 49, and an LDL of 88. (Tr. 123). On January 26, 2004, Dr. Zorrilla noted her hypertension was not well controlled and adjusted her medications. (Tr. 122). On February 6, 2004, Dr. Zorrilla reported that Banks' current prescription, Lotrel, was controlling her blood pressure exceedingly well. (Tr. 119). At that time, her blood pressure was 120/70. (Tr. 119). On May 23, 2005, however, Dr. Zorrilla found that Banks had uncontrolled hypertension and

coronary arterioaclerotic heart disease. (Tr. 454). He recorded her blood pressure at 190/100 and adjusted her medications. (Tr. 454). On each of her visits, Banks weight remained relatively the same at about 207 pounds, but according to her testimony she has since lost 27 pounds. (Tr. 464-65).

On September 10, 2003, Banks had severe glaucoma, but had laser treatment to correct it. (Tr. 138). Her ophthalmologist reported on April 19, 2004, that her glaucoma is currently controlled on drops and she has corrected vision of 20/20 bilaterally and normal intraocular pressures. (Tr. 138).

Here, upon this record, the objective medical evidence factor weighs in favor of the ALJ's conclusion that Banks is not disabled. While Banks argues the ALJ erred in failing to properly consider Banks' medication side effects and all of her limitations in his RFC finding, the record does not support this argument. The ALJ acknowledged Banks' need to frequently use the restroom and evaluated the objective medical evidence in his opinion. (Tr. 32-37). The ALJ found that there is no objective medical evidence that Banks' alleged impairments and pain resulting therefrom are of such degree and severity to preclude her from all substantial gainful activity. The evidence in the record supports this finding.

### B.   Diagnosis and Expert Testimony

The second element considered is the diagnosis and expert opinions of treating and examining physicians on subsidiary questions of fact. Unless good cause is shown to the contrary, "the opinion, diagnosis, and medical evidence of the treating physician, especially when the consultation has been over a considerable amount of time, should be accorded considerable weight." *Perez v. Schweiker,* 653 F.2d 997, 1001 (5th Cir. 1981). For the ALJ to give deference to a medical opinion, the opinion must be more than conclusional and must be supported by clinical and laboratory findings. *Scott v.*

*Heckler*, 770 F.2d 482, 485 (5th Cir. 1985); *Oldham v. Schweiker*, 660 F.2d 1078, 1084 (5th Cir. 1981).  Indeed, "[a] treating physician's opinion on the nature and severity of a patient's impairment will be given controlling weight if it is 'well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with . . . other substantial evidence.'"  *Newton v. Apfel*, 209 F.3d 448, 455 (5th Cir. 2000) (quoting *Martinez*, 64 F.3d at 176).  The opinion of a medical specialist is generally accorded more weight than opinions of non-specialists.  *Id.*

The Social Security Regulations provide a framework for the consideration of expert medical opinions of a claimant's treating physician.  Under 20 C.F.R. § 404.1527(d)(2), consideration of a treating physician's opinion must be based on:

(1) the physician's length of treatment of the claimant,

(2) the physician's frequency of examination,

(3) the nature and extent of the treatment relationship,

(4) the support of the physician's opinion afforded by the medical evidence of record,

(5) the consistency of the opinion with the record as a whole; and

(6) the specialization of the treating physician.

*Newton*, 209 F.3d at 456.  While opinions of treating physicians need not be accorded controlling weight on the issue of disability, in most cases such opinions must at least be given considerable deference. Social Security Rule 96-2p provides in this regard:

> [A] finding that a treating source medical opinion is not well supported by medically acceptable clinical and laboratory diagnostic techniques or is inconsistent with the other substantial evidence in the case record only means that the opinion is not entitled to "controlling weight," not that the opinion should be rejected.  Treating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in 20 C.F.R. 404.1527 and 416.927.  In many cases, a treating sources's medical opinion will be entitled to the greatest weight and should be

adopted, even if it does not meet the test for controlling weight.

Social Security Ruling (SSR) 96-2p, 61 Fed. Reg. 34490 (July 2, 1996). In this Circuit, as in most others, before a medical opinion of a treating physician can be rejected, the ALJ must consider and weigh the six factors set forth in 20 C.F.R. § 404.1527(d). *Newton*, 209 F.3d at 456. In the end, however, it is the ALJ who "has sole responsibility for determining a claimant's disability status.'" *Martinez v. Chater*, 64 F.3d 172, 176 (5th Cir. 1995).

The doctor on record who assessed Banks' residual functional capacity in this case was Dr. Zorrilla, Banks' cardiologist. On September 5, 2005, he recorded that Banks' disability was permanent. (Tr. 451). He based this conclusion on her status post heart surgery, and his diagnosis that she had coronary artery disease and diabetes mellitus. (Tr. 451). Dr. Zorrilla completed a Residual Functional Capacity Questionnaire on November 28, 2005. (Tr. 446). In it, he found Banks could sit or stand for 15 minutes at one time; and that she could sit, stand, or walk for a total of less than two hours in an eight-hour working day. (Tr. 447-48). He also concluded she needed to walk every fifteen minutes for three minutes. (Tr. 448). He determined that Banks could occasionally carry less than ten pounds, but no more than that. (Tr. 448). According to Dr. Zorrilla, Banks can never twist, stoop, crouch/squat, climb ladders or stairs, and she has significant limitations in reaching, handling, or fingering. (Tr. 449). She can also rarely look up or down and occasionally turn her head right or left. (Tr. 448).

Banks argues the ALJ failed to property consider the opinion of treating physician, Dr. Zorrilla. However, in his evaluation of that evidence, the ALJ explained:

> The undersigned finds that this physician's assessment is not totally supported by appropriate diagnostic evidence or tests to ascertain the existence or degree of damage the claimant might have suffered. She does not require any assistive devices,

>has not required any further hospitalizations or physical therapy. She has managed to lose weight and this is definitely beneficial to the claimant. The cardiologist stated the claimant experienced exertional chest pain that worsened when she bends over. He noted clinical finds [sic] and objective signs as midline scar on the chest and chest wall tenderness. It is apparent that this assessment was based on the claimant's subjective complaints and not as a result of objective medical evidence or corroborating measures to show the degree of pain or incapacity reportedly experience by the claimant. Nevertheless, the undersigned considered the cardiologist's assessment in determining the claimant's residual functional capacity.

(Tr. 35-36). This statement demonstrates the ALJ recognized the specialization of Dr. Zorrilla in cardiology, but concluded the objective medical evidence on the record did not support the physician's opinion, and found it was inconsistent with the record as a whole. (Tr. 36). This consideration is consistent with that required under 20 C.F.R. § 404.1527(d)(2). Therefore, the ALJ properly evaluated Dr. Zorrilla's opinion, but ultimately rejected it as not being fully supported by the record. The ALJ had the discretion to make such a determination. *See Martinez v. Chater*, F.3d at 176 (The ALJ has the "sole responsibility for determining a claimant's disability status.").

       **C.**    **Subjective Evidence of Pain**

The third element considered is the subjective evidence of pain, including the claimant's testimony and corroboration by family and friends. Not all pain is disabling, and the fact that a claimant cannot work without some pain or discomfort will not render him disabled. *Cook,* 750 F.2d at 395. The proper standard for evaluating pain is codified in the Social Security Disability Benefits Reform Act of 1984, 42 U.S.C. § 423. The statute provides that allegations of pain do not constitute conclusive evidence of disability. There must be objective medical evidence showing the existence of a physical or mental impairment which could reasonably be expected to cause the pain. Statements made by the individual or his physician as to the severity of the plaintiff's pain must be reasonably

consistent with the objective medical evidence of the record. 42 U.S.C. § 423. "Pain constitutes a disabling condition under the SSA only when it is 'constant, unremitting, and wholly unresponsive to therapeutic treatment.'" *Selders*, 914 F.2d at 618-19 (citing *Harrell v. Bowen*, 862 F.2d 471, 480 (5th Cir. 1988)). Pain may also constitute a non-exertional impairment which can limit the range of jobs a claimant would otherwise be able to perform. *See Scott v. Shalala,* 30 F.3d 33, 35 (5th Cir. 1994). The Act requires this Court's findings to be deferential. The evaluation of evidence concerning subjective symptoms is a task particularly within the province of the ALJ, who has the opportunity to observe the claimant. *Hames,* 707 F.2d at 166.

In her testimony, Banks described pain in her hands, lower back, ankles, and neck. (Tr. 463). In addition, she complained of chest pains she had every other day. (Tr. 462). The ALJ described these pains in his decision, and stated the following:

> Based on the foregoing, the undersigned finds that the record evidence fails to support the claimant's subjective complaints, including pain, of such severity as to be disabling under the Regulations for determining disability. Furthermore, the medical evidence and other evidence fails to support the claimant's allegations as credible to the extent alleged.

(Tr. 467). Credibility determinations, such as that made by the ALJ in this case in connection with Banks' subjective complaints of pain, are generally within the province of the ALJ to make. *See Greenspan v. Shalala*, 38 F.3d 232, 237 (5th Cir. 1994) ("In sum, the ALJ 'is entitled to determine the credibility of medical experts as well as lay witnesses and weigh their opinions accordingly.'") (quoting *Scott v. Heckler*, 770 F.2d 482, 485 (5th Cir. 1985), *cert. denied*, 514 U.S. 1120 (1995). Because the record indicates the ALJ made and supported his credibility determination, and because the ALJ did not rely on any inappropriate factors in making his credibility determination, this factor also weighs in favor of the ALJ's decision.

### D.      Education, Work History, and Age

The fourth element considered is the claimant's educational background, work history, and present age. A claimant will be determined to be disabled only if the claimant's physical or mental impairments are of such severity that she is not only unable to do her previous work, but cannot, considering her age, education, and work experience, engage in any other kind of substantial gainful work with exists in the national economy. 42 U.S.C. § 423(d)(2)(a).

Banks was a 59-year-old individual with a 12th grade education at the time of the hearing before the ALJ. (Tr. 451, 33). In the past 15 years, Banks has been a cook at a hospital, a cook's helper at MHMR, and a short order cook at a gas station. (Tr. 89-92). Vocational expert Don Marth, Ph.D. asked Banks about what she did at her past relevant work, and he answered a hypothetical from the ALJ about the jobs available to a person of Banks' age, education, and work experience. (Tr. 467-76). After this, he explained a short order cook is light exertional level work, and she could still work as a short order cook both as she performed it and as it was performed in the national economy. (Tr. 472).

Banks argues the ALJ erred in finding she can perform her past relevant work, because he evaluated her as a short order cook, as opposed to a main cook, which she listed in her work history records. A main cook is medium exertional level work, and she is not able to perform work at a medium exertional level. However, Banks listed in her past relevant work history that she was a short order cook from 1992-1994. (Tr. 89, 92). Although she may have worked as a main cook, her work as a short order cook is still a part of her past relevant work. Because the record supports the ALJ's conclusion that Banks is still able to perform her past relevant work as a short order cook, the ALJ was correct in concluding, at step four, that Banks is not disabled under the Act.

Banks also argues the ALJ erred in finding that Banks "Returned to Work" on March 31, 2004. The Commissioner, however, argues this was a typographical error and did not affect the credibility of Banks. After reviewing the both arguments, the ALJ's opinion, and the testimony on record, this Court finds this was a typographical error and did not prejudice Banks. In both the findings section, and the main body of his decision, the ALJ wrote the claimant returned to work on March 31, 2004, when in fact she ceased to work on March 31, 2004. (Tr. 32-37). However, the following quotes from the ALJ's opinion support the argument this was a typographical error:

> She testified at the hearing that she had worked from October 2003 to March 31, 2004.
>
> She amended her onset date to March 31, 2004.
>
> At the hearing the claimant testified that she worked until March 31, 2004 and that she could not work anymore due to shortness of breath and chest pain that occurs every other day.

(Tr. 33-34). In addition, the ALJ wrote, "She amended her onset date at the hearing from June 21, 2003 to March 31, 2004 when she returned to work, due to hypertension, diabetes, glaucoma, and a heart condition." (Tr. 33). This finding would not make sense unless the ALJ meant Banks "ceased" to work on March 31, 2004, because she would not return to work with all of the listed impairments. Finally, during the testimony of Banks, the ALJ clarified that March 31, 2004 was the onset date. (Tr. 459-60, 477). All of this evidence supports the conclusion that this was a typographical error, and because the ALJ recognized Banks ceased to work on March 31, 2004, Banks was not prejudiced by this error.

## VI. Conclusion and Order

Considering the record as a whole, the undersigned is of the opinion that the ALJ and the Commissioner properly used the guidelines propounded by the Social Security Administration, which

directs a finding of "not disabled" on these facts. *See Rivers v. Schweiker*, 684 F.2d 1144 (5th Cir. 1982). As all the relevant factors weigh in support of the ALJ's decision, and as the ALJ used the correct legal standards, the Court

ORDERS that Defendant's Motion for Summary Judgment is GRANTED, and the Commissioner's decision is AFFIRMED.

Signed at Houston, Texas, this 24th day of July, 2008.

_____
Frances H. Stacy
United States Magistrate Judge